
RECEIVED
IN ALEXANDRIA, LA
SEP 2 3 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| **DEBORAH GUILLORY THORNHILL** | **CIVIL ACTION NO. 07-1033** |
| versus | **JUDGE TRIMBLE** |
| **FINLEY, INC., d/b/a NAOMI HEIGHTS NURSING HOME, ET AL** | **MAGISTRATE JUDGE KIRK** |

---

### MEMORANDUM RULING

Before the court is defendants' motion for partial summary judgment[1] in which it seeks dismissal of plaintiff's Title VII sexual harassment claims. For the reasons expressed herein below, the court finds that defendants' motion should be GRANTED in part and DENIED in part.

I.   BACKGROUND

*Relevant Facts*

Plaintiff Deborah Guillory Thornhill ("Thornhill") filed suit against defendants Finley, Inc., d/b/a Naomi Heights Nursing Home ("Naomi Heights"), Finley Matthews, Jr. ("Mr. Matthews") and Renee Matthews ("Mrs. Matthews") on June 15, 2007 alleging that she was fired from her job as Activities Director at Naomi Heights after reporting several instances of

---

[1] R. 17.

1

sexual harassment by Mr. Matthews, a supervisor, to Mrs. Matthews, also a supervisor.[2]

Specifically, plaintiff alleges that on Friday, September 17, 2004 Mr. Matthews asked her whether "she was the fooling around type," or was "committed to her husband."[3] On this occasion plaintiff also alleges that Mr. Matthews asked her to do sexual favors for him in exchange for payment of up to $300.[4]

Plaintiff alleges that on Monday, September 20, 2004 Mr. Matthews asked her whether or not she had thought about his offer over the weekend, to which she replied that she could not do those things with him.[5] Plaintiff states that Mr. Matthews then offered to "teach [her] how."[6] Plaintiff alleges that when she further declined his advances, he asked, "so you're not going to give me none for my birthday?"[7]

Plaintiff further alleges the following Friday, Mr. Matthews instructed her that she would have to close the canteen she had been operating in the activities room, but stated that he was not closing the canteen because plaintiff wouldn't "give him none."[8]

Plaintiff states that she met with Mrs. Matthews on the following Monday, September 27, 2004 to discuss the conversation which plaintiff alleges occurred on Friday, September 17th.

---

[2] R. 1.

[3] Deposition of Thornhill (2/7/2008), attached as "Exhibit A" to motion, at pp. 16, 39.

[4] Id.

[5] Id., at pp. 39-40.

[6] Id.

[7] Id.

[8] Id., at p. 40.

Plaintiff alleges, during that meeting, that she recounted the various comments made by Mr. Matthews, including his assurance that the canteen was not being closed as a result of her refusal of his sexual advances.[9] Plaintiff asserts that she was instructed to go home for the remainder of the day, rather than quitting then and there as offered, and that Mrs. Matthews would need to talk to Mr. Matthews about these alleged incidents.[10] Plaintiff also asserts that Mrs. Matthews told her that Mr. Matthews was bipolar and probably didn't know what he was saying.[11]

Later that afternoon, plaintiff was fired during a telephone conversation with Mrs. Matthews.[12] Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on July 14, 2005 on the basis of the allegations explained above.[13] During the pendency of the EEOC investigation, Mr. and Mrs. Matthews dissolved defendant corporation Finley, Inc. by affidavit.[14] Plaintiff filed this suit, alleging both sexual harassment and retaliation claims under Title VII of the Civil Right Act of 1964[15] and La. R.S. 23:332, et seq. after receiving a Notice of Right to Sue from the EEOC.[16]

---

[9] Deposition of Thornhill (2/7/08), attached as "Exhibit A" to motion, at pp. 63-64.

[10] Id.

[11] Id.

[12] Id., at p. 65.

[13] EEOC "Charge of Discrimination," attached as "Exhibit A" to R. 1.

[14] "Affidavit of Dissolution," attached as "Exhibit B" to R. 10.

[15] 42 U.S.C. § 2000e-2(a)(1).

[16] R. 1.

Defendants filed a motion to dismiss[17] pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of all claims against Mr. and Mrs. Matthews in their individual capacities and dismissal of plaintiff's state law claims against all defendants. This court found that Mr. and Mrs. Matthews were successors in interest to the dissolved corporation and that, as such, they were not entitled to dismissal in their individual capacities. Accordingly, this portion of defendants' motion was denied. The court also found that plaintiff's state law claims against all defendants were prescribed pursuant to La. R. S. 23:303(D), a point conceded by plaintiff. Accordingly, we granted this portion of defendants' motion and dismissed all state law claims under La. R.S. 23:331, et. seq.[18]

Defendants now seek partial summary judgment as to the remaining federal sexual harassment claims against them on the basis that plaintiffs' allegations, when taken as true, do not demonstrate a viable quid pro quo or hostile work environment claim under Title VII. We examine these issues below.

*Applicable Standard*

The motion before the court requests summary judgment pursuant to Fed. R. Civ. P. 56. In ruling on such a motion, we must determine whether the "...pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no genuine issue as to any material fact..."[19] A "material fact" is one which, given its resolution in

---

[17] R. 4.

[18] R. 12.

[19] Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

4

favor of one party or another, might affect the outcome of the suit under applicable law.[20] An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[21]

Once the moving party has carried its burden of showing an absence of evidence to support the non-moving party's case, the burden shifts to the non-party to come forward with specific facts showing a genuine factual issue for trial.[22] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried.[23] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible at trial.[24] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact issue not pled by the non-moving party.

If the moving party, here defendants, fails to demonstrate the absence of material fact

---

[20] Anderson, supra, 477 U.S. 242, 248.

[21] Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000), citing Anderson, supra, 477 U.S. 242, 248.

[22] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[23] SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[24] Fed. R. Civ. P. Art. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

questions or if plaintiffs, on the other hand, succeed in demonstrating the existence of such questions, the motion must be denied.[25]

## II. ANALYSIS

Defendants' motion asserts that no genuine issues of material fact exists as to plaintiff's quid pro quo sexual harassment claim and such claim fails as a matter of law because she suffered no tangible employment action undertaken by Mr. Matthews, her alleged harasser.[26] Defendants' motion also asserts that any hostile work environment claim that plaintiff may have also fails because the alleged conduct, when taken as true for the purposes of this motion, does not rise to the level necessary for success of that claim.[27] We address defendants' arguments below.

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits sexual harassment that results in a tangible employment action or in the establishment of a hostile work environment.[28] Title VII is not a "general civility code" and, thus, not all claims of sexual harassment rise to the level necessary to invoke Title VII's protections.[29]

In order to maintain a claim for sexual harassment under Title VII, plaintiff must

---

[25]Gonzales, supra, at *2, citing Taita Chem. Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 388-89 (5th Cir. 2001).

[26]R. 17 at pp. 11-12.

[27]Id., at pp. 13-17.

[28]42 U.S.C. § 2000e-2(a)(1); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); Lauderdale v. Texas Dept. of Criminal Justice, 512 F.3d 157, 162 (2007).

[29]Lauderdale, 512 F.3d at 163, citing Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (citations omitted).

demonstrate: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment complained of was based upon sex; and (4) that the harassment complained of affected a term, condition or privilege of employment.[30] In order to satisfy the fourth element, plaintiff must either demonstrate that she was subjected to a tangible employment action as a result of her acceptance or rejection of the unwelcome sexual harassment,[31] or that the unwelcome sexual harassment was so objectively and subjectively severe and pervasive as to "'alter the conditions of [the victim's] employment and create an abusive working environment.'"[32] When plaintiff can demonstrate a tangible employment action, the claim is classified as a quid pro quo claim. Plaintiff's employer becomes vicariously liable for the harassment when plaintiff can show that the tangible employment action was taken as a result of plaintiff's acceptance or rejection of the unwelcome sexual harassment.[33] In such cases, defendant employer is not entitled to assert the affirmative defense to damages detailed in Ellerth and Faragher and is liable per se.

When no tangible employment action is demonstrated, the claim is classified as a hostile work environment claim.[34] For plaintiff to prevail on this type of claim, plaintiff must show that a reasonable person would find the alleged conduct hostile and abusive and that plaintiff did, in fact, perceive the alleged conduct as such. The alleged conduct must be of such a nature that it

---

[30] Watts v. Kroger, 170 F.3d 505 (5th Cir. 1999).

[31] Casiano v. AT&T Corp., 213 F.3d 278 (5th Cir. 2000).

[32] Lauderdale, 512 F.3d at 163.

[33] Casiano, 213 F.3d at 283.

[34] Id.

altered plaintiff's work environment and constituted abuse based on sex. The court will look at the totality of the circumstances, including the frequency of the alleged harassment and its severity at each instance. Conduct which is sufficiently severe may create a hostile work environment even when it happens infrequently. Likewise, less severe conduct which occurs frequently may also create a hostile work environment.[35] When plaintiff can demonstrate sufficient frequency and/or severity of the harassment, defendant employer will be held vicariously liable unless that employer can prove that "(1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."[36]

In the case at bar, neither party disputes that plaintiff was fired by Mrs. Matthews and, thus, plaintiff has clearly demonstrated a tangible employment action. Applying the standards above to this case, plaintiff has stated a claim for quid pro quo sexual harassment. What remains for the purpose of this motion, is to determine whether or not any genuine issue of material fact exists concerning whether or not this tangible employment action resulted from plaintiff's acceptance or rejection of the alleged sexual harassment.

Defendants assert that any claim by plaintiff for quid pro quo sexual harassment fails because plaintiff has suffered no tangible employment action.[37] As we have explained above,

---

[35] Lauderdale, 512 F.3d at 163.

[36] Casiano, 213 F.3d at 284, citing Ellerth, 524 U.S. at 754 and Faragher, 524 U.S. at 787-88, each citing Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993).

[37] R. 17 at p. 12.

the court disagrees and finds that although the forced closure of the canteen would not constitute a tangible employment action,[38] plaintiff's firing is clearly a tangible employment action. Defendants also assert that since it is undisputed that Mrs. Matthews, not Mr. Matthews her alleged harasser, is the one who fired plaintiff, a quid pro quo claim is not possible under the Fifth Circuit's reasoning in Casiano v. AT&T Corp.[39] Plaintiff disputes this argument and denies that Casiano stands for the proposition that plaintiff's alleged harasser, Mr. Matthews would have had to fire her in order for her quid pro quo claim to survive summary judgment. The court has examined Casiano and agrees with plaintiff that it does not mandate summary judgment in favor of defendants simply because her alleged harasser is not the one who delivered the news of her firing.

In that case, the Fifth Circuit affirmed a district court's finding that plaintiff failed to demonstrate that he was subjected to a tangible employment action and that he further failed to establish a nexus between his ineligibility for a management program within his company and a performance review written by a supervisor who he alleges sexually harassed him. The circuit court found, as did the district court before it, that plaintiff's employer voluntarily withdrew the performance review plaintiff complained of and his ineligibility was based on a later performance review not authored by his harasser.[40]

Casiano was an employee of AT&T and was granted a temporary position as a Training

---

[38]See Ellerth, 524 U.S. at 761 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

[39]213 F.3d 278 (5th Cir. 2000).

[40]Id., at p. 283.

9

Assistant in AT&T's Education Department, where he was supervised by Kathleen Stiggers ("Stiggers").[41] While on the job as a Training Assistant, Casiano claimed he was sexually harassed by Susie Valenzuela ("Valenzuela"), a fellow Course Instructor in the Education Department.[42] Casiano claimed that he reported Valenzuela's conduct to his instructor and mentor, Kathy Aguilar ("Aguilar"), but to no avail.[43] After receiving no satisfaction from Aguilar, he also complained to upper management, including Corporate Security and AT&T's Equal Opportunity Department.[44]

Casiano eventually returned to his former position as a Customer Representative and sought selection for participation in AT&T's Associate-to-Management Assessment of Process ("AMAP").[45] In order to apply to participate in AMAP, Casiano needed to have had a performance review within the previous twelve (12) months.[46] Aguilar prepared the required review with input from several Course Administrators, including Valenzuela. The report rated Casiano as "satisfactory," a rating far below what was required for participation in AMAP.[47]

Casiano hired an attorney who contacted AT&T to inform them of his client's allegations

---

[41] Id., at p. 280.

[42] Id., at pp. 280 - 82.

[43] Id., at p. 280.

[44] Id., at p. 281.

[45] Id.

[46] Id.

[47] Id.

of sexual harassment against Valenzuela.[48] Valenzuela was removed from her job pending an investigation of Casiano's allegations.[49] Interviews with eleven employees, including Casiano and Valenzuela led the Equal Employment Department to conclude that there was insufficient evidence to corroborate Casiano's claims of sexual harassment, but that his performance review should have been completed by Stiggers, who was technically his supervisor the entire time.[50] AT&T withdrew Aguilar's performance review of Casiano and Stiggers prepared a new one which also found Casiano's performance to be only "satisfactory."[51] Casiano filed suit against AT&T and Valnezuela, asserting that Aguilar's performance review and subsequent ineligibility for AMAP constituted an adverse employment action as a consequence of his complaints about Valenzuela's alleged conduct.[52]

The facts of Casiano provide great guidance to this court as to the instant motion. In the case at bar, as in Casiano, the alleged tangible employment action (Aguilar's performance review) was not carried out by the alleged harasser (Valenzuela) but, instead, by another supervisor. The court did not base its affirmation of the district court's finding on the fact that Aguilar authored Casiano's first performance review, but rather on the fact that this review was voluntarily withdrawn and that the second review was the one which prevented Casiano from being eligible to participate in AMAP. Likewise, in the case before us, who verbally informed

---

[48] Id.

[49] Id.

[50] Id., at p. 282.

[51] Id.

[52] Id.

11

plaintiff that she was fired from her job is not determinative.

Defendants offer the affidavit of Mrs. Matthews in support of their contention that she alone made the decision to fire plaintiff.[53] Plaintiff's deposition testimony disputes this assertion, stating that during the meeting in which plaintiff recounted Mr. Matthews' alleged conduct, Mrs. Matthews concluded that "she needed to talk to [Mr. Matthews] more about this."[54] Defendants also cite Hosey v. M.L. Smith, Jr., Inc.[55] as authority for the idea that plaintiff's subjective belief, without more, that Mrs. Matthews was influenced by Mr. Matthews in her decision to fire plaintiff. While the court has read Hosey and agrees with the result in that case, we find that the facts before us require a different result.

While it is undisputed that Mrs. Matthews called plaintiff and delivered the news that she was fired, this court concludes that a fact-finder (in this case, a jury) could reasonably determine that Mr. Matthews influenced the ultimate decision to terminate plaintiff's employment, because Mr. and Mrs. Matthews, both supervisors with some level of authority over plaintiff, are married to one another. Defendants do not dispute that Mrs. Matthews would have had to speak to Mr. Matthews about plaintiff's allegations of harassment in order to investigate the matter. Defendants' assertion that Mrs. Matthews alone decided to fire plaintiff are squarely at odds with plaintiff's unchallenged assertion that Mrs. Matthews conferred with her harasser, Mr. Matthews before arriving at a decision as to her continued employment. The result is a credibility dispute clearly within the province of a jury in this case, as it constitutes a genuine issue of material fact

---

[53] Affidavit of Renee Matthews, attached as "Exhibit B" to motion, at ¶ 4.

[54] See deposition of Thornhill, attached as "Exhibit A" to motion, at p. 63, lines 5-23.

[55] 2007 WL 2592357 (W.D. La. Sept. 6, 2007).

as to whether plaintiff's termination from employment was the result of her acceptance or rejection of Mr. Matthews' alleged sexual advances.

Accordingly, defendants' motion for summary judgment shall be denied as to plaintiff's quid pro quo sexual harassment claim. We next address defendants' argument that they are entitled to summary judgment as to plaintiff's hostile work environment claim.

Defendants' motion asserts that plaintiff's allegations, when taken as true for the purposes of this motion, do not rise to the level of severity and/or frequency required to constitute a hostile work environment in violation of Title VII.[56] Defendants cite several Fifth Circuit rulings, including Hockman v. Westward Communications, LLC,[57] which they believe illustrate that the conduct alleged by plaintiff is neither severe, nor pervasive as interpreted by that circuit court. In Hockman, for example, the plaintiff alleged conduct which included slapping plaintiff on the behind with a newspaper, brushing against plaintiff's breasts and behind and attempting to kiss plaintiff, among other actions and comments.[58] Citing Shepherd v. Comptroller of Pub. Accounts,[59] the court found that Hockman's allegations, when taken as true, did not demonstrate severe and/or pervasive conduct which altered a term, condition or privilege of plaintiff's employment.[60] The court also relied on Hockman's own testimony that the comments were not pervasive and the unwelcome physical contact was not severe in arriving at

---

[56] R. 17 at pp. 13-17.

[57] 407 F.3d 317 (5th Cir. 2004).

[58] Id., at p. 321-22.

[59] 168 F.3d 871 (5th Cir. 1999).

[60] Hockman, 407 F.3d at 328.

13

its decision that plaintiff failed to demonstrate the necessary elements of a hostile work environment claim.[61]

Comparing the alleged conduct of Hockman with plaintiff's allegations, defendants assert that the facts of the instant case clearly do not rise to the level of those in Hockman, in which the Fifth Circuit found no viable claim. Accordingly, defendants argue that they are entitled to summary judgment on this issue. The court agrees.

The U.S. Supreme Court cautions that not every offensive comment or action taken by a supervisor constitutes a violation of Title VII.[62] Given plaintiff's own testimony that she did not feel inhibited in her job performance by Mr. Matthews' comments[63] and that they began only a few days before she was fired, we find that plaintiff has not demonstrated the necessary elements of severity or pervasiveness required in order to carry her hostile work environment claim past the summary judgment stage.

When taken as true, the comments alleged by plaintiff are both unprofessional and a stunning display of bad judgment. We are reminded, however, that Title VII's intended purpose is not as a "general civility code," but rather a safeguard against those harms which rise to the level of a violation of our civil rights as guaranteed by the U.S. Constitution.[64] Accordingly, we find that defendants' motion for summary judgment should be granted as to plaintiff's hostile

---

[61]Id.

[62]Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998), citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993).

[63]Deposition of Thornhill (2/7/08) attached as "Exhibit A" to motion at p. 23, lines 16 - 20.

[64]Lauderdale, 512 F.3d 157, 163 (5th Cir. 2007), citing Faragher, 524 U.S. at 788.

14

work environment claim.

## III. CONCLUSION

The court has carefully considered the law and argument submitted by the parties and finds that plaintiff has successfully demonstrated the existence of a genuine issue of material fact concerning whether or not she was fired as a result of her acceptance or rejection of Mr. Matthews' alleged sexual invitations. Therefore, defendants' motion for summary judgment shall be denied as to plaintiff's quid pro quo sexual harassment claim. The court further finds that plaintiff has failed to demonstrate the required severity and/or pervasiveness of alleged conduct so as to enable her claim of hostile work environment to survive summary judgment. Accordingly, defendants' motion shall be granted as to this claim.

The court will issue a judgment reflecting our findings detailed above.

Alexandria, Louisiana
September 23, 2008

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE