U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

DEC 15 2008

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DEBORAH GUILLORY THORNHILL | CIVIL ACTION NO. 07-1033 |
| versus | JUDGE TRIMBLE |
| FINLEY, INC., d/b/a NAOMI HEIGHTS NURSING HOME, ET AL | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is defendants' motion for partial summary judgment[1] on plaintiff's Title VII retaliation claim. For the reasons expressed herein below, the court finds that the motion should be DENIED.

I. BACKGROUND

   A. Relevant Facts

Plaintiff Deborah Guillory Thornhill ("Thornhill") filed suit against defendants Finley, Inc. d/b/a Naomi Heights Nursing Home ("Naomi Heights"), Finley Matthews, Jr. ("Mr. Matthews") and Renee Matthews ("Mrs. Matthews") asserting sexual harassment, retaliation and hostile work environment claims under Title VII of the Civil Rights Act of 1964[2] and La. R.S. 23:332, et seq.

---

[1] R. 29.

[2] 42 U.S.C. § 2000e-2(a)(1).

1

Plaintiff alleges that on Friday, September 17, 2004, while she was employed as the Activities Director at Naomi Heights, Mr. Matthews asked her whether "she was the fooling around type," or was "committed to her husband."[3] On that occasion, plaintiff also alleges that Mr. Matthews asked her to perform sexual favors for him in exchange for payment of up to $300.[4]

Plaintiff further alleges that on Monday, September 20, 2004 Mr. Matthews asked her whether or not she considered his offer over the weekend and plaintiff replied that she could not do those things with him.[5] Plaintiff states that Mr. Matthews then offered to "teach [her] how."[6] Plaintiff asserts that Mr. Matthews added that "he wasn't much in the pants department, but could do wonders with his tongue."[7] When plaintiff declined these advances, she alleges that Mr. Matthews asked, "so you're not going to give me none for my birthday?"[8]

Plaintiff asserts that the final act of harassment occurred on the following Friday when Mr. Matthews informed her that she would have to close the canteen she had been operating in the activities room because it was interfering with sales at his vending machines.[9] After informing plaintiff that she would have to close the canteen, plaintiff alleges that Mr. Matthews

---

[3]Deposition of Thornhill (2/7/08), attached as "Exhibit 1" to motion, at p. 18, lines 14-16.

[4]Id., at lines 18-23.

[5]Id., at p. 39, line 23 - p. 40, line 2.

[6]Id.

[7]Id., at p. 18, line 24 - p. 19, line 1.

[8]Id., at p. 40, lines 3 - 4.

[9]Id., at p. 24, lines 6 - 17.

assured her that he wasn't closing the canteen because she "wouldn't give [him] none."[10]

Plaintiff was fired from her job as Activities Director at Naomi Heights on Monday, September 27, 2004, hours after a meeting wherein she relayed her allegations of sexual harassment to Mrs. Matthews, who was the spouse of her alleged harasser and, also, her supervisor.[11]

Plaintiff filed suit after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission.[12]

Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). This court denied defendants' request for dismissal in their individual capacities, finding that Mr. and Mrs. Matthews were not entitled to that relief because they were successors in interest to Finley, Inc., which they dissolved by affidavit.[13] We found that defendants were, however, entitled to dismissal of plaintiff's state law claims because they were prescribed by operation of La. R.S. 23:303(D).[14]

Thereafter, this court considered a motion for partial summary judgment by defendants wherein they argued that they were entitled to judgment in their favor as to plaintiff's quid pro quo and hostile work environment sexual harassment claims.[15] We again denied a portion of

---

[10] Id., at lines 19 - 25.

[11] Id., at p. 62, line 3 - p. 65, line 25.

[12] R. 1.

[13] R. 12.

[14] Id.

[15] R. 17.

3

defendants' motion, finding that plaintiff had stated a viable claim for quid pro quo sexual harassment which hinged on credibility determinations which were reserved unto a jury in this case.[16] We granted defendants' motion as to plaintiff's hostile work environment claim, however, finding that plaintiff had failed to demonstrate any genuine issue of material fact which would constitute the requisite severity or pervasiveness of conduct under applicable jurisprudence.[17]

Defendants now come before the court with a second motion for partial summary judgment in which they seek judgment in their favor as to plaintiff's retaliation claim and gender discrimination claim, insofar as gender discrimination is alleged.[18] The jury trial of this matter is currently set for Monday, January 20, 2009 before the undersigned.

### B. Applicable Standard

The motion before the court requests summary judgment pursuant to Fed. R. Civ. P. 56. In ruling on such a motion, we must determine whether the "...pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no genuine issue as to any material fact..."[19] A "material fact" is one which, given its resolution in

---

[16] R. 26.

[17] Id.

[18] R. 29. Plaintiff does not assert a gender discrimination claim in this case and, therefore, does not address defendants' arguments concerning such claim. Any reference to gender discrimination in this court's prior order was inadvertent and should be disregarded. Accordingly, this portion of defendants' motion will be denied as moot.

[19] Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

4

favor of one party or another, might affect the outcome of the suit under applicable law.[20] An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[21]

Once the moving party has carried its burden of showing an absence of evidence to support the non-moving party's case, the burden shifts to the non-party to come forward with specific facts showing a genuine factual issue for trial.[22] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried.[23] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible at trial.[24] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact issue not pled by the non-moving party.

If the moving party, here defendants, fails to demonstrate the absence of material fact

---

[20]Anderson, supra, 477 U.S. 242, 248.

[21]Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000), citing Anderson, supra, 477 U.S. 242, 248.

[22]Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[23]SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[24]Fed. R. Civ. P. Art. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

questions or if plaintiffs, on the other hand, succeed in demonstrating the existence of such questions, the motion must be denied.[25]

## II. ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee

> "because he has opposed any practice made an unlawful
> employment practice by this sub-chapter or because
> he has made a charge, testified, assisted, or participated
> in any manner in an investigation, proceeding, or hearing
> under this sub-chapter."[26]

Plaintiff may establish retaliation by an employer through circumstantial evidence within the framework announced by the United States Supreme Court in McDonnell Douglas Corp. v. Green.[27] Thus, plaintiff must first establish a prima facie case of retaliation, showing that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.[28] If plaintiff establishes a prima facie case, the burden shifts to the employer to show a legitimate, non-retaliatory reason for the adverse employment action.[29] Once the employer offers its reason, the burden shifts again to plaintiff to demonstrate that the reason offered is a pretext

---

[25] Gonzales, supra, at *2, citing Taita Chem. Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 388-89 (5th Cir. 2001).

[26] 42 U.S.C. 2000e-3(a).

[27] 411 U.S. 792 (1973).

[28] LeMaire v. Louisiana Dept. of Transp. and Development, 480 F.3d 383, 388 (5th Cir. 2007), citing Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 429 (5th Cir. 2005).

[29] Id., citing Baker v. Am. Airlines, Inc., 430 F.3d 750, 745-55 (5th Cir. 2005).

6

for retaliation under Title VII.[30]

Defendants' motion before the court assumes arguendo that plaintiff has established a prima facie case of retaliation.[31] The court has reviewed the record in this case and agrees that plaintiff has carried her burden in that respect. The parties do not dispute that plaintiff reported the alleged sexual harassment by Mr. Matthews on Monday, September 27, 2004 or that she was fired on the same day. While a temporal link between the protected activity and adverse employment action is not determinative, it does suggest a causal connection.[32] Taking plaintiff's allegations as true for purposes of this motion, we find that plaintiff has successfully established a prima facie case of retaliation under Title VII.

Defendants respond to plaintiff's prima facie case by offering several reasons for her dismissal. First, defendants point out that plaintiff was operating a canteen at Naomi Heights without permission from her supervisors. Defendants assert that this conduct posed a significant risk to the residents, many of which have special dietary concerns such as diabetes. In order to operate this canteen, defendants also point out, plaintiff requested money from petty cash and failed to return receipts for all of her expenditures. Finally, defendants state that plaintiff was visited by a "complete stranger" while on duty at Naomi Heights and she left this stranger alone with residents. Defendants argue that plaintiff was a probationary employee and that each of these three reasons was sufficient, even when considered separately, to constitute a legitimate,

---

[30] Id., citing Baker, 430 F.3d at 755.

[31] R. 29-2 at p. 13. The court notes that defendants only concede plaintiff's prima facie case of retaliation for the purposes of this particular motion.

[32] LeMaire, 480 F.3d at 390, citing Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995).

7

non-retaliatory reason for plaintiff's dismissal.

Defendants' burden at this stage of the McDonnell Douglas analysis is simply one of production, not persuasion.[33] As recounted above, defendants offer three (3) instances of conduct which they insist warrant dismissal. Defendants also offer the employee code of conduct, among other documents, which plaintiff signed during her orientation, as evidence that the conduct discussed above violated the rules applicable to all Naomi Heights employees.[34] We have reviewed defendants' stated reasons for plaintiff's dismissal and find that all three (3) are legitimate, non-retaliatory reasons for plaintiff's discharge and that, accordingly, defendants have successfully shifted the evidentiary burden back to plaintiff to demonstrate that these reasons are merely pretext for retaliation.

Defendants correctly argue that plaintiff must show that the adverse employment action at issue would not have occurred "but for" her participation in a protected activity.[35] Plaintiff must meet this burden with respect to each of the three (3) legitimate, non-retaliatory reasons offered by defendants.[36] For the purposes of this motion, we take plaintiff's factual assertions on this point as true, construing them in the light most favorable to her as the non-moving party.

Plaintiff asserts that her operation of the canteen at Naomi Heights is pretextual as a reason for her dismissal because defendants admit that they operated their own snack machines

---

[33]McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007), citing Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

[34]Employee code of conduct attached to R. 35 as "Exhibit A-1."

[35]Strong v. University Healthcare System, LLC, 482 F.3d 802, 806 (5th Cir. 2007), citing Septimus v. University of Houston, 399 F.3d 601 (5th Cir. 2005).

[36]McCoy, 492 F.3d at 557, citing Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003).

to which residents and employees had unrestricted access.[37] Plaintiff cites the deposition testimony of Karen Bryant, another Naomi Heights employee, in which she stated that while she only knew of one resident who purchased food from the canteen that was not on his restricted diet, she "knew of one or two residents that she had to counsel 'all the time' for buying food items from the defendants' vending machines."[38] Plaintiff also asserts that Mr. Matthews purchased items from the canteen, which was open for about a month before plaintiffs claim they became aware of it. Although defendants admit that they purchased hot dogs from plaintiff, they deny that they knew that the hot dog sales were a part of a larger canteen operation.[39] Plaintiff alleges that Mr. Matthews, as stated above, told her that the reason she had to close the canteen was because it competed with sales at his vending machines, but not because she rejected his sexual advances.[40] Plaintiff asserts that Mr. Matthews gave her permission to continue to operate the canteen until she sold the inventory she had just purchased.[41]

Taking these factual allegations as true, we find that plaintiff has successfully shown the existence of a genuine issue of material fact concerning whether or not her operation of the canteen was merely a pretextual reason for her dismissal. Whether or not plaintiff's account of the alleged sexual harassment by Mr. Matthews concerning the canteen is credible and, additionally, whether or not defendants' assertions that they were unaware of the canteen when

---

[37]R. 34-1 at pp. 6-7.

[38]R. 34-1 at p. 7.

[39]R. 29-2 at p.8, n. 5.

[40]R. 34-1 at pp. 3-4.

[41]Id.

they purchased items from it are credible is a fact issue which must be left to the jury in this case.

Plaintiff next points out that the bookkeeper, Donna Singer, was the custodian of the petty cash and knew of each request for petty cash plaintiff made. Plaintiff asserts that she did not take any petty cash from that fund without Donna Singer's knowledge and that any abuse of the petty cash fund was not discussed by Mrs. Matthews at the Monday, September 27, 2004 meeting. If that meeting's purpose was to investigate complaints from both Donna Singer and Karen Bryant, plaintiff contends that the petty cash issue should have been discussed.

Again, taking plaintiff's factual allegations as true for the purposes of this motion, we find that plaintiff has demonstrated a genuine issue of material fact as to whether or not her use of petty cash at Naomi Heights was merely a pretextual reason for her dismissal. Only the jury may determine whether or not either party's version of the events is more credible than the other.

Finally, plaintiff asserts that Mr. Rosenthal, the "complete stranger" who defendants claim she left alone with the residents at Naomi House while she was on duty there, only came inside the building once and his purpose there was to pick up an employment application. Plaintiff claims that, while he was there to pick up the application, he came into the Activities Room and visited with her.

Plaintiff's version of the events concerning Mr. Rosenthal is drastically different from defendants' allegations. Again, whether either party's version of these events is more credible than the other is a matter for the jury's consideration in this case.

## III. CONCLUSION

The court has reviewed the law and arguments advanced by the parties and finds that plaintiff successfully established a prima facie case of retaliation. We also find that defendants

successfully articulated three (3) legitimate, non-retaliatory reasons for plaintiff's dismissal. Finally, we find that plaintiff has demonstrated the existence of genuine issues of material fact concerning the final phase of analysis under McDonnell Douglas: whether or not the reasons offered by defendants are merely pretext for retaliation under Title VII. Given the election of trial by jury in this case, we find that only the jury may determine which party's version of events is most credible in this case. Without such credibility determinations, the court cannot resolve the outstanding fact issues concerning pretext and, accordingly, summary judgment is improper. We find, therefore, that defendants' instant motion must be denied.

The court will issue a order reflecting these findings.

Alexandria, Louisiana
December 15, 2008

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE